IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| MAGGIE GREENE-WRIGHT | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: __3:21-CV-237__ |
| | ) |
| CAPITAL ONE SERVICES, LLC | ) |
| Serve: Corporation Service Company | ) |
|     100 Shockoe Slip, Fl. 2 | ) |
|     Richmond, VA 23219 | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff Maggie Greene-Wright ("Plaintiff"), by counsel, states as follows for her Complaint against defendant Capital One Services, LLC ("Capital One" or "Defendant").

### NATURE OF ACTION

1. This is an action under Title VII,[1] the ADEA,[2] the ADA, and Virginia law.[3] After 10 years of successful employment at Capital One, Plaintiff, who is female, African-American, over forty years old, and suffers from fibromyalgia, blood pressure issues, and anxiety, was wrongfully terminated in February 2020 based on her race, color, age, and disability, after being denied reasonable accommodations, in retaliation for asking for such accommodations, and in violation of Virginia public policy. As explained herein, this violates state and federal law, and Plaintiff now files this lawsuit to hold Capital One liable for its unlawful actions.

---

[1] "Title VII" refers to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.

[2] "ADEA" refers to the Age Discrimination in Employment Act, 29 U.S.C. § 261, *et seq*.

[3] "ADA" refers to the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*.

1

**PARTIES**

2.      Maggie Greene-Wright is an individual resident of Richmond, Virginia. She is a black female who, at all relevant times herein, has been over the age of 40. Also, at all relevant times herein, Plaintiff has suffered from fibromyalgia, blood pressure issues, anxiety, and insomnia. Each of these conditions, collectively and individually, are physical and/or mental impairments that substantially limit one or more of Plaintiff's daily life activities. Indeed, Plaintiff's ability to concentrate and focus is significantly impacted by the "brain fog" that is caused by her fibromyalgia and by the stress caused by anxiety. Due to these impairments, Plaintiff is, and at all times has been, a "qualified individual with a disability" under the ADA.

3.      Defendant is an employer under Title VII, the ADEA, and the ADA.

**JURISDICTION AND VENUE**

4.      Jurisdiction is conferred on this Court by 28 U.S.C. § 1331 and 28 U.S.C. § 1343 and for Count VI, 28 U.S.C. § 1367.

5.      Venue is proper in this district and division pursuant to 28 U.S.C. § 1391, as this is the district and division where a substantial part of the events or omissions giving rise to the claim occurred.

6.      All conditions precedent to the filing of this action have been met by Plaintiff. She filed a timely charge with the Equal Employment Opportunity Commission ("EEOC") and has filed this action within 90 days of receiving a right-to-sue letter, dated January 8, 2021, from the EEOC.

**FACTUAL BACKGROUND**

7.      Plaintiff worked at Capital One for almost ten years. She began in June 2010 and was terminated on February 24, 2020.

8. Plaintiff last worked as a Senior Outbound Recovery Coordinator/High Value Recovery.  In this capacity, she was responsible for communicating with customers to advise of potential legal actions that would be against them if their accounts were not reconciled.  More specifically, Plaintiff explained to customers the details of their account deficiencies and then, either collect full payment on the account or offer settlement options in order to rectify the debt on the account, such as payment plans. She would also send out letters for collection efforts and payment arrangements.

9. For many years, Plaintiff was a top performer in her position.  She received many awards and rewards for her work, including, but not necessarily limited to gift cards and tickets to a sporting event.

10. For years, Plaintiff thrived in her position while working under a black female manager. Beginning in mid-2018, however, Plaintiff was assigned to work under a white manager. And from that time through the date of her termination, Plaintiff, even though she had suffered instances of discrimination over the years, suffered several pronounced instances of discrimination and retaliation.

11. To begin, in or around the fall of 2018, Plaintiff was treated worse than two similarly situated younger co-workers as to work expectations.  Specifically, in September 2018 when Plaintiff returned to work after missing time for pneumonia, Plaintiff was given the same monthly goal by her manager as a younger co-worker who had also returned to work.  The problem, however, was that the younger co-worker had returned to work *before* she had.  Plaintiff should not have been given the same goal and, instead, she should have received a lesser goal.  Plaintiff complained to her manager that this unbalanced situation was not fair.

3

12.     A similar thing happened the following month, in October 2018. At that time, Plaintiff's manager gave her a goal of $18,000. He also gave the same goal to a younger co-worker who had returned to work approximately a week earlier. In other words, Plaintiff had less time to complete the same work goal as her younger co-worker. And this proved to be problematic, as Plaintiff missed her monthly goal by $804.24. If Plaintiff had been given an extra week to complete her goal – as had been done for her younger co-worker – she would have met her monthly goal.

13.     The next year, in or around June 2019, Plaintiff's manager actually voiced his thoughts about Plaintiff's age to her, telling her words to the effect that when he was working at the State Department, he would see people working in jobs they didn't necessarily like while waiting to retire and wondering if it was worth it to continue to work in such situations. Plaintiff took the manager's comments to suggest to her that she should retire.

14.     Separately, in July of 2019, Plaintiff reached out to HR to voice her concerns about having too many noise distractions in her work area. Specifically, Plaintiff voiced her concerns about how such distractions made her unable to concentrate due to her brain fog and made it difficult for her to achieve her monthly goals and discussed how she previously had had seat changes to help with such distractions. HR took no action in response to Plaintiff's concerns.

15.     Additionally, in September 2019, Plaintiff requested a space heater as a medical accommodation for her fibromyalgia. Capital One denied the request, however, telling Plaintiff it would cause a circuit overload. The company, however, allowed identical or similar items for Plaintiff's co-workers. These included: (i) a space heather for a younger white employee; (ii) portable refrigerators for two younger employees, one of whom was white; and (iii) an electric blanket for a younger white employee.

4

16. Also in September 2019, Plaintiff made a mistake by accidentally e-mailing a customer's account information to her personal e-mail address, a violation of Capital One policy. Soon thereafter, Plaintiff acknowledged her mistake, received a written warning, and was placed on 60-day probation.

17. Plaintiff was scheduled to have surgery in mid-November 2019 and then was scheduled to have leave time thereafter to recover. As such, her 60-day probationary period was not scheduled to end until March of 2020. Plaintiff did, in fact, undergo her surgery and did, in fact, take her leave time.

18. Plaintiff returned to work after her surgery on February 4, 2020. At that time, however, Plaintiff began having problems with a fellow co-worker, who was younger than Plaintiff. Specifically, the younger o-worker began to stalk and harass Plaintiff -- both at work and outside of work -- but she tried to deflect her behavior by actually accusing *Plaintiff* of engaging in wrongful behavior.

19. Indeed, on February 6, 2020, Plaintiff's co-worker swore out a false affidavit and filed a petition for a protective order against her in the General District Court for the City of Richmond. The petition rested on the false allegation that Plaintiff had subjected the co-worker to violence, force, and threats.

20. Upon information and belief, Plaintiff's co-worker shared her false allegations about Plaintiff to Capital One's upper management and then filed the protective order petition at the direction of a Capital One manager. A hearing on the petition was scheduled to take place on February 20, 2020.

21. In the meantime, as a result of her co-worker's improper actions, Plaintiff was investigated by Capital One and also felt she had to leave work during at times due to the co-worker's false request for a protective order.

5

22. On February 20, 2020, Plaintiff went to court to defend herself against the false protective order petition. After hearing from both Plaintiff and her co-worker, the Court denied the petition, saying words to the effect that even if what Plaintiff's co-worker was saying was true, it did not involve threatening or violent conduct.

23. Despite prevailing at the protective order hearing, Capital One terminated Plaintiff four days later – on February 24, 2020. According to Capital One, the basis for the termination was "*upcoming coaching*" and a "violation of the e-mail policy."

24. Capital One's basis was, and is, preposterous. First, there is no such thing as "upcoming coaching" at Capital One. An employee either *is* coached and then provided more time to rectify the issue that necessitated the coaching, *or* she is *fired* because previous coaching efforts didn't work. "*Upcoming*" coaching is thus a facially inconsistent notion as a basis for someone's termination.

25. Second, since the time of her violation in the fall of 2019, which did *not* rise to the level of a termination action, Plaintiff had not committed any subsequent violations of Capital One's e-mail policy. As such, Plaintiff had not engaged in any violation of Capital One's e-mail policy that could have justified her termination. In fact, Plaintiff's 60-day probationary period for the initial violation had not yet even expired.

26. In truth, the reasons provided by Capital One for terminating Plaintiff were pretextual and masked the true reasons behind her termination: race, color, age, disability, retaliation, and the fact that a co-worker had falsely taken out a protective order against her. All of these reasons violate the law.

27. Since her unlawful termination, Plaintiff has been unable to find suitable full-time replacement employment.

6

## COUNT I:
### TITLE VII DISCRIMINATION CLAIM
### (COLOR AND RACE)

28. The allegations of paragraphs 1-27 are realleged as if fully set forth herein.

29. By virtue of her status as an African-American, Plaintiff is entitled to Title VII's protection against discrimination based on her color and race.

30. Under Title VII, it is unlawful for an employer "to fail or refuse to hire *or to discharge* any individual, or *otherwise to discriminate* against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of" her color or race.

31. As is clear from the allegations stated herein, Plaintiff was discriminated against and discharged based on her color and race.

32. As a direct result of the Capital One's discrimination, Plaintiff has been caused to suffer the loss of potential occupational opportunities. Additionally, she has been caused to suffer personal injury, anxiety, emotional distress, personal and professional humiliation and embarrassment as a result of Capital One's actions.

33. Capital One's actions also constitute gross, wanton, malicious, reckless, and/or intentional violations of Plaintiff's rights, thus entitling her to punitive damages.

## COUNT II:
### AGE DISCRIMINATION CLAIM

34. The allegations of paragraphs 1-33 are realleged as if fully set forth herein.

35. The ADEA prohibits discrimination against employees on the basis of their age.

36. Plaintiff is a covered employee under the ADEA because she was over 40 years of age at the time of the discriminatory actions described herein.

7

37. Here, Capital One discriminated against Plaintiff in violation of the ADEA because, most notably, it decided to terminate her for bogus reasons and treated her less favorably than similarly situated younger employees.

38. As a direct result of Capital One's discrimination, Plaintiff has suffered past and future lost wages and other financial harm.

39. Plaintiff has been damaged by this wrongful termination.

## COUNT III:
## WRONGFUL TERMINATION IN VIOLATION UNDER THE ADA

40. The allegations of paragraphs 1-39 are realleged as if fully set forth herein.

41. Plaintiff is a "qualified individual" with a "disability" as those terms are used and defined under the ADA and its subsequent amendments.

42. Capitol One's termination of Plaintiff's employment was because of her disabilities and/or because she requested a reasonable accommodation under the ADA and constitutes discrimination in violation of the ADA.

43. As a result of Capital One's actions, Plaintiff has suffered a loss of wages and related damages, including but not limited to back pay and front pay and any other legally available damages.

## COUNT IV:
## DENIAL OF REASONABLE ACCOMMODATION UNDER THE ADA

44. The allegations of paragraphs 1-43 are realleged as if fully set forth herein.

45. Plaintiff is a "qualified individual" with a "disability" as those terms are used and defined under the ADA and its subsequent amendments.

46. Plaintiff made reasonable requests for accommodations related to noise and related to having a portable heater. Such accommodations would have allowed her to perform the essential functions of her job at Capital One without any problems.

47. Capital One's denials of Plaintiff's requests were unlawful denials reasonable accommodations under the ADA.

48. As a result of Capital One's actions, Plaintiff has suffered damages.

## COUNT V:
## RETALIATION UNDER THE ADA

49. The allegations of paragraphs 1-48 are realleged as if fully set forth herein.

50. Under ADA, it is unlawful for an employer to retaliate against an employee for engaging in protected activity under the Act.

51. Here, Plaintiff engaged in protected activity when she asserted her rights under the ADA and requested reasonable accommodations.

52. Capital One unlawfully retaliated against Plaintiff for engaging in the protected activities by terminating her.

53. As a direct result of the Capital One's retaliation, Plaintiff has suffered a loss of wages and related damages, including but not limited to back pay and front pay and any other legally available damages.

## COUNT VI - *BOWMAN* CLAIM

54. The allegations of paragraphs 1-53 are realleged as if fully set forth herein.

55. Here, based on the facts alleged herein, Capital One wrongfully terminated Plaintiff in violation of the public policies of Virginia. Such policies are found in many places in the Virginia Code but mainly in Va. Code. § 19.2-159.

56. Plaintiff's termination here was in violation of the policies contained Va. Code. § 19.2-159.

57. As a proximate cause of Capital One's conduct, Plaintiff has suffered substantial compensatory damages, including mental and emotional distress,

reputational harm, loss of sleep, loss of income, humiliation, embarrassment, loss of time, and other damages.

58. In addition, because Capital One's actions were made intentionally, willfully, maliciously, out of personal spite and ill will against Plaintiff, and with utter and conscious disregard of her rights, Plaintiff is also entitled to punitive damages in this matter.

WHEREFORE, Plaintiff respectfully and specifically requests the following relief against Capital One:

a. Accept jurisdiction of this case.

b. Declare that Plaintiff has suffered acts of discrimination under Title VII, the ADA, and the ADEA, and retaliation under the ADA at the hands of Capital One.

c. Award Plaintiff compensation for loss of salary and other benefits, including all fringe benefits, to which she would have been entitled had she not been discriminated and retaliated against as to her employment. Such damages shall be in an amount in excess of five hundred thousand dollars ($500,000), the exact amount to be determined at trial.

d. Award Plaintiff compensatory damages for the humiliation, damage to her reputation, mental and emotional distress, occupational losses, and pain and suffering that she has experienced and endured as a result of the unlawful actions of Capital One. Such damages shall be in an amount in excess of one hundred fifty thousand dollars ($150,000), the exact amount to be determined at trial.

e. Award Plaintiff front pay and back pay in an amount in excess of five hundred thousand dollars ($500,000), the exact amount to be determined at trial.

  f. Award Plaintiff punitive damages in the amount of five hundred thousand dollars ($500,000) for Capital One's violations of federal law.

  g. Award Plaintiff three hundred fifty thousand dollars ($350,000) in punitive damages arising from Capital One's violations of state law;

  h. Award Plaintiff liquidated damages under the ADEA;

  i. Award Plaintiff pre-judgment interest;

  j. Award Plaintiff post-judgment interest;

  k. Award Plaintiff her costs and reasonable attorney's fees; and

  l. Award Plaintiff all such other further and appropriate equitable relief.

**A TRIAL BY JURY IS DEMANDED**.

             MAGGIE GREENE-WRIGHT

     By: <u>s/ Richard F. Hawkins, III</u>
        Virginia Bar Number: 40666
        THE HAWKINS LAW FIRM, PC
        2222 Monument Avenue
        Richmond, Virginia 23220
        (804) 308-3040 (telephone)
        (804) 308-3132 (facsimile)
        Email: rhawkins@thehawkinslawfirm.net

        Counsel for Plaintiff